IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CASE NO. 8:17-mj-00018 |
| | * | |
| ANUJ SUD, | * | FILED UNDER SEAL |
| | * | |
| Defendant | * | |
| | * | |

********

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

Your Affiant, Thomas M. Coyle, Special Agent of the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states as follows:

1. Your affiant is engaged in the investigation of **Anuj SUD** ("**SUD**") and others. As set forth below, your affiant has reason to believe that **SUD** has committed several federal offenses, including (1) corruptly soliciting and demanding for the benefit of a person, and accepting and agreeing to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of Prince George's County, Maryland, involving $5,000 or more, in violation of 18 U.S.C. § 666(a)(1)(B) (Bribery Involving Agent of a Program Receiving Federal Funds), and (2) conspiracy to commit the same, in violation of 18 U.S.C. § 371 (collectively, the "**TARGET OFFENSES**").

**IDENTITY AND EXPERTISE OF AFFIANT**

2. I am an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for federal offenses.

3. For the purpose of the instant application, your Affiant is a federal law enforcement officer under the applicable provisions of the United States Code and under Rule 41(a) of the

Federal Rules of Criminal Procedure.

4. Your affiant has been employed with the FBI since May 2010. Before joining the FBI, your affiant served for 10½ years as a police officer with the Clearwater Police Department in Clearwater, Florida, and approximately 2½ years as a police officer with the Gainesville Police Department in Gainesville, Florida. During my tenure as an FBI Agent, your affiant has participated in criminal investigations involving police corruption, corruption of state and local public officials, violations of election law, drug trafficking, and other unlawful activities. In addition, your affiant has participated in investigations involving wiretaps and has reviewed intercepted and consensually recorded conversations pertaining to public corruption. Your affiant has participated in debriefings of individuals involved in corruption and participated in numerous searches, arrests, and seizure warrants involving a variety of federal offenses.

5. I have personally participated in the investigation of the offenses referred to herein and have reviewed reports and had discussions with other Special Agents and employees of the FBI and other law enforcement agencies related to the instant investigation. I am fully familiar with the facts and circumstances of this investigation. Through training, education, and experience, I am familiar with investigations involving corrupt public officials.

6. The facts set forth in this affidavit are based upon my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other investigators, my and other investigators' review of documents in relation to this investigation, communications with others, including individuals involved in the **TARGET OFFENSES** who have personal knowledge of the events and circumstances described herein, information gained from the interception of wire communications, and information gained through your Affiant's training and experience. To the extent that this affidavit contains statements by witnesses, those

statements are set forth only in part and in substance and are intended to accurately convey the information but not to be verbatim recitations, unless indicated otherwise. This affidavit is submitted for the limited purpose of establishing probable cause in the support of these applications for search warrants, and thus, it does not contain every fact known to me or the United States.

## STATEMENT OF PROBABLE CAUSE

### *Introduction*

7. This case is being investigated by the Baltimore Division of the FBI, the Prince George's County (Maryland) Police Department ("PGCPD"), and the Internal Revenue Service ("IRS").

8. As described further herein, your affiant knows that **SUD** is an attorney licensed to practice law in the State of Maryland since 2005, with an office in College Park, Maryland. Your affiant knows that **SUD** is an attorney in private practice and is a Commissioner on the Prince George's County Maryland Board of License Commissioners ("Liquor Board").

9. David D. SON ("SON") was appointed in 2005 by the Governor of Maryland to serve as a commissioner on the Prince George's County Board of License Commissioners ("Liquor Board"), a position he held continuously until late 2014. Among other things, the Board enforces the state's Alcohol Beverage Laws in Prince George's County. During the 2015 Maryland legislative session, SON served as a liaison for the Prince George's County Senate Delegation. Later in 2015, SON returned to the Liquor Board, this time as its Director.

10. CHS-7 is a Confidential Human Source. In July 2015, CHS-7 began cooperating with the FBI as a registered informant. CHS-7 has a close business and personal relationship with SON. CHS-7 has no criminal convictions but is the target of an ongoing public corruption

investigation being conducted by your affiant. Your affiant believes that CHS-7 ultimately will be the subject of criminal charges related to the ongoing investigation. CHS-7 is providing information to law enforcement in the hope of receiving a more lenient sentence, when CHS-7 ultimately is charged. The information provided by CHS-7 has been corroborated by independent investigation, including public source information, surveillance, consensual monitoring, Title III intercepts, and information provided by other source reporting. Your affiant believes the information received from CHS-7 described herein is credible and reliable.

### *Prince George's County License Commissioners*

11.  The Liquor Board consists of five members, appointed by the Governor under the provision of Section 15-101 of Article 2B of the Annotated Code of Maryland. The Board serves as a quasi-judicial function in administering and enforcing Alcoholic Beverage Laws of the State of Maryland and the local rules and regulations of the Board of License Commissioners.

12.  The Liquor Board, along with the Comptroller of the Treasury and the State Appeal Board, is empowered with sufficient authority to administer and enforce the provisions of Article 2B of the Annotated Code of Maryland which provides restrictions, regulations, provisions, and penalties for the protection, health, welfare, and safety of the people of the State of Maryland.

### *The Bribe Payments*

13.  On September 25, 2015, CHS-7 met with **SUD**. The meeting was consensually recorded. While discussing several topics, to include Liquor Board matters, **SUD** asked CHS-7 "how can I start getting paid?" CHS-7 responded, "I know, right?" **SUD** continued, "Tell your boys you got somebody on the board that can fucking make shit happen," "I got legal fees to pay. Be like, hey Golden Bull you want in man, I got you." CHS-7 mentioned that David **SON** would try to use **SON**'s influence and get the money for himself before **SUD** could receive it. **SUD** told

CHS-7, "I can influence the votes now." Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was soliciting money from CHS-7 in exchange for **SUD**'s assistance with liquor board matters. Your affiant further believes that when **SUD** stated your "boys" he was referring to clients of CHS-7.

14.   On November 20, 2015, CHS-7 met with **SUD** at **SUD**'s office. From there, **SUD** and CHS-7 went to a nearby restaurant. The meeting was consensually recorded. CHS-7 and **SUD** discussed **SUD** voting favorably in two upcoming hearings concerning CHS-7's clients in exchange for money. CHS-7 advised **SUD** that the hearings were to take place on December 2, 2015 and December 15, 2015. The money would come from CHS-7 clients by billing it as a lawyer fee. **SUD** asked CHS-7, "What-what is a typical fee?" CHS-7 replied "I would charge them about three grand. I will bump it to four." **SUD** said, "Okay. That's fine". CHS-7 replied, "Cool?" Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was willing to vote favorably for CHS-7's clients in exchange for a thing of value, namely cash.

15.   On December 2, 2015, a Liquor Board hearing for CHS-7's client, Client #1, took place. **SUD** moved that the licensee, Client #1, be found in violation of the charges as outlined in the summons, but for a lesser amount than originally proposed. This was made unanimous by the other Board members. Based on my training, experience, and the investigation to date, your affiant believes that **SUD** took a favorable action for CHS-7's clients because he expected a thing of value, cash, in exchange.

16.   On December 14, 2015, CHS-7 met with **SUD** at **SUD**'s office. Prior to the meeting, the FBI provided CHS-7 with $1,000 in operational funds in cash to facilitate the controlled bribe payment to **SUD**. Both walked to a nearby restaurant in College Park. This meeting was consensually recorded by CHS-7 with audio/video equipment. After leaving the

restaurant, CHS-7 and **SUD** walked to and entered CHS-7's vehicle. CHS-7 gave $1,000 U.S. currency in bribe money to **SUD** for his help in the December 2, 2015 vote. **SUD** took the money and stated, "Oh my God." Your affiant reviewed a video recording of the bribe payment and observed **SUD** to be visibly excited when receiving the bribe payment. CHS-7 replied, "Yeah, they were happy with the vote man. They were happy with the way you laid it out. Shit man, I had them spooked like they were going to lose their license." Based on my training, experience, and the investigation to date, your affiant believes that **SUD** accepted the money because of the official action that he took on December 2, 2015, for CHS-7's client.

17. On December 15, 2015, a Liquor Board hearing for two of CHS-7's clients took place. **SUD** moved that a new Class B Beer, Wine and liquor license along with a Sunday Sales Permit be issued to CHS-7's other client, Client #2. This motion was made unanimous by the other Liquor Board members. Based on my training, experience, and the investigation to date, your affiant believes that **SUD** voted favorably for CHS-7's client because **SUD** expected a thing of value, cash, in exchange.

18. On December 15, 2015, in the afternoon and after the vote, CHS-7 and **SUD** went to lunch together after the aforementioned hearings. This meeting was consensually recorded. During this meeting, **SUD** asked CHS-7 to remind him for which client did **SUD** receive the bribe money on December 14, 2015 (the day before). **SUD** asked, "So what? [Client #2]? What was thi-what was this for? This was for [Client #2]?" CHS-7 replied, "Yeah. I'll get it for you. I don't have it on me right now." **SUD** continued, "No no no no no! What's in my pocket." CHS-7 said, "Oh from th-from the other day?" **SUD** replied, "Yeah." CHS-7 corrected **SUD**, "Nah that was for [Client #1]." **SUD** then stated, "Damn dude. I like that." CHS-7 advised, "Yeah. Must be nice. That's what I'm saying. You got to get that feeling too right? I mean that's all

about being a team." Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was in possession of at least some of the $1,000 provided to him on December 14, 2015 by CHS-7, and that **SUD** was verifying that **SUD** received the money for his official action.

19. On December 30, 2015, **SUD** and CHS-7 met at a restaurant. Prior to the meeting, the FBI provided CHS-7 with $1,000 in operational funds in cash to facilitate the controlled bribe payment to **SUD**. The meeting was consensually recorded with audio/video equipment. After leaving the restaurant, CHS-7 said to **SUD** that he/she had a "[Client #2] bonus" for **SUD**. Both CHS-7 and **SUD** entered CHS-7's vehicle. CHS-7 then gave $1,000 U.S. currency in bribe money to **SUD** for his help during the December 15, 2015 Liquor Board hearing vote. CHS-7 stated, "This should be-yeah." **SUD** replied, "You alright man." **SUD** then placed the money into his left pocket. CHS-7 continued, "Well that's [Client #2]'s G." **SUD** was observed exiting CHS-7's vehicle and entering **SUD**'s vehicle. Based on my training, experience, and the investigation to date, your affiant believes that **SUD** took the money for the official action that he took on December 15, 2015 for CHS-7's client.

20. On September 13, 2016, CHS-7 and **SUD** met at a restaurant. The meeting was consensually recorded. CHS-7 told **SUD** that a liquor store owner (Client #3) had approached him/her and asked for help with a liquor license violation. CHS-7 explained that Client #3, who was being represented by another attorney, requested CHS-7's help with getting the fine reduced and ensuring the license would not be suspended. CHS-7 told **SUD** that Client #3 would "hook" CHS-7 "up if we could, um, we could get a different max fine. No suspension." Based on my training, experience, and the investigation to date, your affiant believes that CHS-7 was implying that Client #3 would provide money to CHS-7 if CHS-7 could have the fine reduced and ensure

the license does not get suspended. CHS-7 and **SUD** discussed how the owner wanted to sell the license to a client of CHS-7, but if the license is suspended then the owner would not "be able to sell it." **SUD** told CHS-7 that the other attorney should ask the court during the violation hearing to "show mercy these guys are out of business." Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was providing advice to the owner via CHS-7 on how to present the case during the hearing.

21. On October 4, 2016, CHS-7 and **SUD** met at a restaurant. The meeting was consensually recorded. CHS-7 discussed the already-concluded hearing regarding Client #3 and how the outcome had been favorable for Client #3. CHS-7 stated, "Hey man, again, you did great on the um, holding tight on [Client #3] man. I appreciated that, you know." **SUD** responded, "Oh that wasn't me that…it was nothing attached to that except for fucking what the fucking law was." CHS-7 stated, "[Client #3] asked me to talk to you and I said well you know, I'll talk to him but you know, that's as far as it will go, um , then I called him back in my office and you know '[CHS-7] if you talk to him [believed referring to **SUD**], I will take care of you." **SUD** asked, "Did he fucking pony up?" and CHS-7 replied, "Yeah, he did. Not as much as I had hoped." **SUD** stated, "Oh a wedding gift." CHS-7 followed up with, "A wedding gift. Alright brother. I'll get you something nice. Let me know." Based on my training, experience, and the investigation to date, your affiant believes that when **SUD** stated "wedding gift" he was asking for a thing of value from CHS-7 in exchange for **SUD's** assistance. Based on the investigation to date and open source information, your affiant believes **SUD** got married in April 2016.

22. On November 9, 2016, CHS-7 and **SUD** met at **SUD's** gas station/repair shop in Silver Spring, MD. The meeting was consensually recorded. CHS-7 advised **SUD** that he/she had a hearing in front of the liquor board in reference to a client (Client #4) requesting an addition to

8

his/her business. **SUD** asked CHS-7 if the CHS wanted **SUD** to "push it through?" Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was implying that **SUD** would vote in favor the CHS-7's client. CHS-7 told **SUD** that he/she would give **SUD** a "wedding gift." At first, **SUD** advised he was not "worried" about a gift, and "If I was, I would be asking." **SUD** insinuated that he would vote in favor based on their friendship. Later in the conversation, though, and as they were walking around **SUD's** repair shop, CHS-7 stated, "I might have to bring my car in to get some work done." **SUD** responded, "Actually you know what I was thinking? Anytime you want to drop off a gift, bring your car in. Do the oil change and then when you pay. I can just give you a receipt. You see what I am saying?" CHS-7 asked **SUD** what would happen if CHS-7 gave **SUD** a "thousand" dollars. **SUD** told CHS-7 not to "worry about it," and "that way it's a legitimate transaction." Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was willing to accept a bribe from CHS-7 in exchange for **SUD's** official action and that **SUD** wanted the CHS-7 to conceal the money through a business transaction.

23. On November 30, 2016, CHS-7 and **SUD** met at **SUD**'s office. The meeting was consensually recorded. Prior to the meeting, the FBI provided CHS-7 with $1,000 in operational funds in cash to facilitate the controlled bribe payment to **SUD**. Initially, CHS-7 and **SUD** met outside of **SUD**'s office and discussed liquor board matters. CHS-7 talked about his/her past cases and referred to "that [Client #4] thing," and "the drive thru." CHS-7 told **SUD** "that was good," and **SUD** asked was Client #4 "happy?" Based on my training, experience, and the investigation to date, your affiant believes that **SUD** had voted favorably for Client #4. CHS-7 advised that Client #4 was "real happy," and "I got a little bit, something for you." **SUD** responded, "So he uh….that's good. That's good." Shortly thereafter, CHS-7 and **SUD** entered **SUD**'s office and

met inside a conference room. **SUD** talked about something being good, and CHS-7 stated, "Speaking of good. Look. I got a little, what's it called wedding gift for the uh, fucking um…[Client #4] deal." CHS-7 then provided **SUD** with the cash. CHS-7 advised it was a "G" for **SUD**. Based on my training, experience, and the investigation to date, your affiant believes that **SUD** was provided with the $1,000 cash bribe payment in exchange for **SUD's** favorable vote for Client #4. Your affiant reviewed an audio/video-recording of the bribe payment and observed **SUD** taking cash from CHS-7.

## CONCLUSION

Your Affiant affirms under penalty of perjury that the facts and circumstances outlined in this affidavit are true and accurate to the best of his knowledge and belief.

Thomas M. Coyle
Special Agent, FBI

Sworn to and subscribed before me on this 4th day of January, 2017.

Hon. Paul W. Grimm
United States District Judge